IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

LILIO ARAGONES,                          )
                                         )
               Plaintiff,                )     TC-MD 220072N
                                         )
       v.                                )
                                         )
MULTNOMAH COUNTY ASSESSOR,               )
                                         )
               Defendant.                )     **DECISION**

Plaintiff appealed the assessment of property identified as Account R198338 (subject property) for the 2019-20, 2020-21, and 2021-22 tax years. A trial was held by remote means on April 19, 2023. Steve Anderson (Anderson), registered appraiser, appeared and testified on behalf of Plaintiff. Scott Elliott and John James appeared on behalf of Defendant. Shane Turner (Turner), registered appraiser, testified on behalf of Defendant. Plaintiff's Exhibit 1 and Rebuttal Exhibit 1, and Defendant's Exhibit A, were received without objection.

## I. STATEMENT OF FACTS

The subject property is a two-story "daylight ranch style" house built in 1963 and situated on an 8,700-square foot, or 0.2-acre, lot in Northwest Portland. (Ptf's Ex 1 at 1; *see also* Def's Ex A at 3-6.) It includes an attached two-car garage. (*Id.*) The house is 2,358 square feet, of which the main level is 1,253 square feet and the below-grade daylight basement is 1,105 square feet. (Ptf's Ex 1 at 14; Def's Ex A at 3.) The house includes three bedrooms, two full bathrooms, and one half-bathroom. (*Id.*) Anderson testified that the house's condition was "average" or "average minus," with some original elements including the downstairs bathroom and kitchen cabinets, and extremely steep stairs to the lower level. He did not consider the house to be a "fixer" or to suffer from deferred maintenance but noted that many upgrades would be required to effectively market the subject property. Turner determined the house was "average"

or "average plus" condition.[1]  (*See* Def's Ex A at 3.)  He noted some higher quality features including hardwood floors, granite countertops, and bathroom tilework.  (*See id.*)  Anderson testified that the subject property site is "extremely steep" with no yard, but it has a view of downtown Portland.  (Ptf's Ex 1 at 1.)

Both appraisers relied solely upon the sales comparison approach to determine the subject property's value.  Anderson testified that he drove by all his comparable sales, but he did not attempt to confirm any of them.  Turner testified that he attempted to confirm his comparable sales by sending emails to the realtors involved, but he did not receive responses to all emails.  He gave less weight to sales that he could not confirm.  Anderson and Turner selected several of the same sales as comparable to the subject property.  (*See* Ptf's Ex 1 at 14, 22-23, 37-38; Def's Ex A at 3-5.)

Anderson testified that all his comparable sales were within 16 blocks of the subject property.[2]  For the 2019-20 tax year, he selected three comparable sales that ranged from $749,000 to $850,000.  (Ptf's Ex 1 at 14.)  After adjustments, the sales indicated a range of $553,400 to $723,400, and he concluded a value of $590,000 for the 2019-20 tax year.  (*Id.* at 2, 14.)  For the 2020-21 tax year, Anderson selected six comparable sales that ranged from $502,765 to $755,000.  (*Id.* at 22-23.)  After adjustments, the sales indicated a range of $553,400 to $720,800, and he concluded a value of $660,000 for the 2020-21 tax year.  (*Id.* at 2, 22-23.)  For the 2021-22 tax year, Anderson selected six comparable sales that ranged from $502,765 to $840,000.  (*Id.* at 37-38.)  After adjustments, the sales indicated a range of $644,965 to $766,400 and he concluded a value of $650,000 for the 2021-22 tax year.  (*Id.* at 2, 37-38.)

---

[1] The sales grid lists the subject property as "average" but the accompanying narrative states "AVG+." (Def's Ex A at 3.)

[2] Additional details about the comparable sales are discussed in the analysis to the extent relevant.

Anderson's sales grids reflect adjustments for differences in the site, bathrooms, garage, living area, and time of sale.[3] (Ptf's Ex 1 at 14, 22-23, 37-38.) He testified that his site adjustments also reflected differences in view, topography, and market conditions. Anderson's adjustment for living area was a combined adjustment based on $90 per square foot for the main floor and $50 per square foot for the lower level. In selecting a value from the range for each tax year, Anderson testified that he relied upon his experience and judgment.

Turner testified that, for each tax year at issue, he considered six or seven sales, but ultimately selected the three most comparable sales to the subject property for each year.[4] For the 2019-20 tax year, Turner's three sales ranged from $600,000 to $780,000. (Def's Ex A at 3.) After adjustments, the sales ranged from $622,000 to $784,000, and he concluded a value of $750,000. (Id.) For the 2020-21 tax year, Turner's three sales ranged from $755,000 to $813,000. (Id. at 4.) After adjustments, they ranged from $728,000 to $788,000, and he concluded a value of $755,000. (Id.) For the 2021-22 tax year, Turner's sales ranged from $750,000 to $755,000. (Id. at 5.) After adjustments, they ranged from $746,000 to $781,000, and he concluded a value of $755,000. (Id.)

Turner's sales grids reflect adjustments for sale date, view, quality, number of rooms, above-grade living area, below-grade living area, heating and air conditioning, garage, and outdoor features such as decks and patios. (Def's Ex A at 3-5.) Turner testified that he did not adjust for excess land or age because he could not determine market-based adjustments, but he took those characteristics into account in weighing the sales. He found an upward market trend of 1.69 percent in 2019, 3.89 percent in 2020, and 5.22 percent in 2021.

---

[3] Anderson testified that he did not make any time adjustments for the 2019-20 tax year because the market was stable.

[4] Additional details about the comparable sales are discussed in the analysis section to the extent relevant.

The parties' value opinions for each year are set forth below and compared to the tax roll:

|  | 2019-20 | 2020-21 | 2021-22 |
|---|---|---|---|
| **Plaintiff** | $590,000 | $660,000 | $650,000 |
| **Defendant** | $750,000 | $755,000 | $755,000 |
| **Tax Roll** | $827,250 | $827,250 | $869,750 |

## II. ANALYSIS

The issues before the court are the subject property's 2019-20, 2020-21, and 2021-22 real market values. "Real market value" is "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1).[5] The assessment date was January 1, 2019, for the 2019-20 tax year; January 1, 2020, for the 2020-21 tax year; and January 1, 2021, for the 2021-22 tax year. ORS 308.007; ORS 308.210. Real market value "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2). Three approaches to value must be considered but may not be applicable in every case: the cost approach; the sales comparison approach; and the income approach. OAR 150-308-0240(2)(a).

Both parties relied solely on the sales comparison approach. "In utilizing the sales comparison approach, only actual market transactions of property comparable to the subject, or adjusted to be comparable, may be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions." OAR 150-308-0240(2)(c). If non-typical market conditions are involved – such as duress or foreclosure – the appraiser must make market-based adjustments for non-typical conditions. *Id.*

Plaintiff did not file an appeal with the Board of Property Tax Appeals for any of the tax

---

[5] The court's references to the Oregon Revised Statutes (ORS) are to 2019. The 2017 edition of the ORS applies to the 2019-20 tax year but does not differ from the sections of the 2019 edition cited in this decision.

years at issue, so Plaintiff's potential relief is constrained by ORS 305.288. Under that statute, "the difference between the real market value of the property for the tax year and the real market value on the assessment and tax roll for the tax year [must be] equal to or greater than 20 percent." ORS 305.288(1)(b). Plaintiff bears the burden of proof by a preponderance of the evidence, which means "the greater weight of evidence, the more convincing evidence." ORS 305.427; *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

A.     *2019-20 Real Market Value*

For the 2019-20 tax year, both Anderson and Turner relied upon three comparable sales. (Ptf's Ex 1 at 14; Def's Ex A at 3.) Anderson and Turner's sale 1 is the same sale: a 2,602-square foot home on a 0.57-acre lot that was listed for $800,000 and sold for $600,000 in February 2019. Anderson testified that he gave the most weight to sale 1, which was only five homes away from the subject with a similar view, but it had a larger lot that was divided and separately sold after the sale. He made downward adjustments totaling $46,600 for the site, garage, and living area, for an adjusted price of $553,400. Turner also made downward adjustments to sale 1 for living area, but they were offset by a $30,000 upward adjustment for construction quality, concluding an adjusted value of $622,000. Anderson questioned why Turner did not adjust sale 1 for excess land. (*See* Ptf's Rebuttal Ex 1.) Turner responded that he could not determine a market-based adjustment. He gave less weight to sale 1 because of the $200,000 drop from the listing price, the excess land, and the lack of a response from the realtor.

The RMLS listing for sale 1 provides some clarity on the second tax lot, or excess land, and the $200,000 difference between the listing and sale price. The notes say "Two tax lots covering over ½ acre with unobstructed views of [river and mountains]. Property Tax Amt is

sum of two tax lots." (Ptf's Ex 2 at 15.) A second RMLS listing for the 0.18-acre lot shows an asking price of $200,000 in January 2019. (Ptf's Rebuttal Ex 1 at 2.) The notes say, "lot sold individually or in conjunction with adjacent house." (*Id.*) Those RMLS listings indicate that $600,000 was the price for the improved lot, with a separate $200,000 listing for the land.

Anderson's sale 2 was a 3,060-square foot home on a 0.26-acre lot that sold for $780,000 in May 2019. (Ptf's Ex 1 at 14.) He made a net downward adjustment of $56,600 for the site, bathrooms, garage, and living area, for an adjusted price of $723,400. (*Id.*) Anderson testified that he placed the least weight on sale 3 because it had been upgraded prior to sale. (*See also id.* at 20.) It sold for $780,500 and he made a net downward adjustment of $166,900 – primarily for the updated living space – for an adjusted price of $613,600. (*Id.* at 14.)

Turner's sale 2 was a 2,544-square foot home on a 0.18-acre lot that sold for $759,250 in April 2019. (Def's Ex A at 3.) He made a net downward adjustment of $13,320 for time, living area, heating and air conditioning, and garage for an adjusted price of $746,000. (*Id.*) Anderson disputed the comparability of Turner's sale 2, describing it as a "2 story above grade contemporary home." (Ptf's Rebuttal Ex 1.[6]) He provided an RMLS describing the home as "Contemp, Custom." (*Id.* at 4.) Anderson noted the home was built in 1980 and questioned why Turner did not make an age adjustment. (*See id.*) Turner responded that he could not determine a market-based adjustment.

Turner's sale 3 was a 2,232-square foot home on a 0.21-acre lot that sold for $780,000 in September 2018. (Def's Ex A at 3.) He made a net upward adjustment of $3,580 for time, view, quality, bathroom, above-grade living area, below-grade living area, and heating and cooling for an adjusted price of $784,000. (*Id.*) Although the net adjustment was only $3,580, the gross

---

[6] Turner's sale 2 had more above-grade living area than below-grade living area: 1,846 square feet above-grade vs 698 square feet below grade. (Def's Ex A at 3.)

adjustment was 20.13 percent of sale price, largely due to two $50,000 adjustments for view and quality.[7] (*See id.*) Like sale 2, it had more above-grade living area and less below-grade living area than the subject. (*Id.*) Anderson questioned whether sale 3 was comparable to the subject; he characterized it as "split entry" and noted the RMLS described the style as "contemp" rather than daylight ranch. (Ptf's Rebuttal Ex 1 at 5.)

Both appraisers agree that sale 1 is the most similar to the subject, notwithstanding some questions about the excess land. As noted above, the RMLS listings adequately resolve the discrepancy between the $800,000 list price and $600,000 sale price: the $200,000 difference was for the second, unimproved lot. That means Anderson's $25,000 downward site adjustment is not warranted, indicating a value of $578,400 for sale 1, compared to Turner's value of $622,000 for the same sale. Anderson's second-best sale is significantly higher at $723,400, as is Turner's second-best sale at $746,000. "As has often been said, [real market value] is a range of value, rather than an absolute." *Price v. Dept. of Rev.*, 7 OTR 18, 25 (1977). Here, a value at the lower end of the range is supported because sale 1 is most comparable to the subject. The court finds that the subject property's 2019-20 real market value was $650,000, which satisfies the 20 percent error requirement of ORS 305.288(1).[8]

B.    *2020-21 Real Market Value*

For the 2020-21 tax year, Anderson relied upon six comparable sales and Turner relied upon three. (Ptf's Ex 1 at 14-15; Def's Ex A at 4.) Anderson testified that he placed the most weight on sale 2, which is the same as his sale 1 for the 2019-20 tax year; he reached the same adjusted price of $553,400 for the 2020-21 tax year. (Ptf's Ex 1 at 7, 14.) As discussed above,

---

[7] Net adjustments are often a less reliable indicator of accuracy than gross adjustments. *Rouda v. Clatsop County Assessor*, TC-MD 160206N, 2017 WL 1535213 at *7 (Or Tax M Div, Apr 28, 2017).

[8] The 20 percent threshold for the 2019-20 tax year is $661,800.

the court concludes that the $25,000 site adjustment is unwarranted because the sale did not include the second lot. The court further finds that the revised adjusted value of $578,400 for sale 2 is understated because the market was increasing, and Anderson made no time adjustment.

Anderson's sales 5 and 6 were also used by Turner, though Turner used sale 5 for the 2021-22 tax year. (Ptf's Ex 1 at 23; Def's Ex A at 4-5.) Sale 5 was a 2,147-square foot home on a 0.21-acre lot that sold for $750,000 in July 2020. (Ptf's Ex 1 at 23.) He made a net downward adjustment of $29,200 for site size, living space, and time for an adjusted value of $720,800.[9] (*Id.*) Anderson's sale 6 was a 2,552-square foot home on a 0.39-acre lot that sold for $755,000 in June 2020. (*Id.*) He made a net downward adjustment of $35,100 for site size, bathrooms, living space, and time for an adjusted price of $707,500.[10] (*Id.*) Turner determined an adjusted value of $743,000 for the same sale. (Def's Ex A at 4 (sale 1).) The difference is largely due to Turner's upward adjustments for the heating and cooling system and the garage. (*See id.*[11])

Anderson's sale 3 was a 2,398-square foot home on a 0.22-acre lot that sold for $670,000 in May 2020. (Ptf's Ex 1 at 22.) He made a net upward adjustment of $38,200 for site size, bathrooms, living space, and time, for an adjusted price of $708,200. (*Id.*) Turner's sale 3 was a 2,558-square foot home on a 0.15-acre lot that sold for $813,000 in December 2019. (Def's Ex A at 4.) He made a net downward adjustment of $25,140 for living area and outdoor features for an adjusted price of $788,000. (*Id.*) Anderson questioned whether sale 3 was comparable to the subject, describing it as a "tri-level style home." (Ptf's Rebuttal Ex 1.)

---

[9] After accounting for the time adjustment, Turner's adjusted value for this property was similar to Anderson's. (*See* Def's Ex A at 5 (sale 1).)

[10] Anderson corrected an error in his bathroom adjustment at trial and revised the adjusted value.

[11] Anderson noted that county records indicate the main level was 1,400 square feet, whereas Turner listed it as 1,288 square feet. (Ptf's Rebuttal Ex 1.) However, Anderson also listed the main level size as 1,288 square feet. (*See* Ptf's Ex 1 at 23.) Presumably, both appraisers relied on the RMLS listing. (*See id.* at 35.)

Anderson's sales 1 and 4 required large adjustments: $115,100 net for sale 1 and $65,900 net for sale 4, including a downward adjustment of $99,100 for living area. Similarly, Turner's sale 2 required a net downward adjustment of $72,080, mostly for living space.[12] (Def's Ex A at 4.) Large adjustments "call into question either the accuracy of the adjusted sale prices or the comparability of the properties selected." *Rouda,* 2017 WL 1535213 at *7. Thus, the court places less weight on those sales.

The court finds that the 2020-21 comparable sales indicate a value range of $578,400 to $788,000. As noted above, Anderson's sale 2 with an adjusted price of $578,400 is likely on the low end because it occurred in February 2019 and was not adjusted for time. The remaining sales indicate a narrower range of $707,500 to $788,000. Any value in that range fails to satisfy the 20 percent error requirement of ORS 305.288(1), so the court is unable to order a reduction.[13]

C.      *2021-22 Real Market Value*

For the 2021-22 tax year, Anderson relied upon six comparable sales and Turner relied upon three. (Ptf's Ex 1 at 37-38; Def's Ex A at 5.) Two sales were used by both appraisers: Anderson's sale 3 was the same as his sale 5 for the 2020-21 tax year, which was also used by Turner as his sale 1 for the 2021-22 year. (Ptf's Ex 1 at 23, 37; Def's Ex A at 5.) Anderson's sale 5 was the same as his sale 6 for the 2020-21 year. (Ptf's Ex 1 at 23, 38.) It is also Turner's sale 3 for the 2021-22 year and his sale 1 for the 2020-21 year. (Def's Ex A at 4-5.)

Anderson testified that he placed the most weight on sale 4, which was a 2,120-square foot home on a 0.26-acre lot that sold for $750,000 in April 2021. (Ptf's Ex 1 at 38.) He testified that the property was located three blocks north of the subject. Anderson made a net

---

[12] Anderson noted that sale 2 was a "split entry style home," unlike the subject. (Ptf's Rebuttal Ex 1.)

[13] The 20 percent error threshold for the 2020-21 tax year is $661,800.

downward adjustment of $60,100 for site, bathrooms, living area, and time, for an adjusted price of $689,900. (*Id.*) His downward adjustment of $71,700 for the site was significant and not adequately explained given its similar size to the subject: 0.26 acres vs. 0.2 acres.

Anderson's sale 3 and Turner's sale 1 was a 2,147-square foot home on a 0.21-acre lot that sold for $750,000 in July 2020. (Ptf's Ex 1 at 37; Def's Ex A at 5.) Anderson made a net upward adjustment of $16,400 for site, living area, and time, for an adjusted price of $766,400. (*Id.*) Turner made a net upward adjustment of $31,460 for time, living area, and heating and cooling for an adjusted price of $781,000. (*Id.*) Anderson's sale 5 and Turner's sale 3 was described above as Anderson's sale 6 and Turner's sale 1 for the 2020-21 year. (*See* Ptf's Ex 1 at 23, 38; Def's Ex A at 4-5.) For the 2021-22 tax year, Anderson made a net downward adjustment of $24,300 for an adjusted price of $730,700, and Turner made a net upward adjustment of $23,860 for an adjusted price of $779,000. (*Id.*) For the 2021-22 tax year, Anderson made a downward site adjustment of $35,000, which is difficult to reconcile with his downward site adjustment of $15,000 for the 2020-21 year. (*See id.*)

Anderson's sale 2 was a 2,398-square foot house on a 0.22-acre lot that sold for $670,000 in May 2020. (Ptf's Ex 1 at 37.) He made a net upward adjustment of $56,000 for site, bathrooms, living area, and time, for an adjusted price of $726,000. (*Id.*) Turner's sale 2 was a 2,120-square foot home on a 0.26-acre lot that sold for $750,000 in April 2021. (Def's Ex A at 5.) He made a net downward adjustment of $4,260 for time, bathrooms, and living area for an adjusted price of $746,000. (*Id.*)

Anderson's remaining two sales – 1 and 6 – each required relatively large adjustments. He made a net upward adjustment of $142,000 to sale 1 and a net downward adjustment of $73,900 to sale 6. (Ptf's Ex 1 at 37-38.) The court places less weight on those sales due to the size of the adjustments they required.

The court finds an indicated value range of $689,900 to $781,000 for the 2021-22 tax year. The low end of the range is a sale to which Anderson made a large, inadequately explained site adjustment of $71,700, suggesting that his adjusted price is understated. Excluding that sale yields a range of $726,000 to $781,000. Any value in that range fails to satisfy the 20 percent error requirement of ORS 305.288(1), so the court is unable to order a reduction.[14]

### III. CONCLUSION

Upon careful consideration, the court finds that the subject property's real market value is overstated on the tax rolls for each of the years 2019-20, 2020-21, and 2021-22. However, the court may only correct the 2019-20 value because it alone meets the 20 percent threshold required by ORS 305.288(1). The 2020-21 and 2021-22 tax years must be dismissed. Now, therefore,

IT IS THE DECISION OF THIS COURT that the real market value of property identified as Account R198338 was $650,000 for the 2019-20 tax year.

IT IS FURTHER DECIDED that Plaintiff's appeal for the 2020-21 and 2021-22 tax years is dismissed.

Dated this _____ day of September 2023.

_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

---

[14] The 20 percent error threshold for the 2021-22 tax year is $695,800.

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on September 13, 2023.*